Charles Walton F48589
Avenal State Prison
P.O. Box 8
Avenal, Ca 93204

**FILED**

NOV - 1 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

October 24, 2007

Office of The Clerk
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

SBA
550

E-filing

**CV 07    5580**

**SBA  (PR)**

Re: Discrimination

Subject: The deprivation/denial of prisoner(s) right to have
claims heard by the Judicial Branch of Government.

Dear  Sir/Mam

Please be advised and duely informed I am a California State
Prisoner, incarcerated at Avenal State Prison at Kings County.

This letter is in regard to the gross deprivation of prisoners
Constitutional Rights on the part of Avenal State Prison Officials.

This is an urgent and desperate plead for help, on the behalf of
disabled inmates. there is a large segment of the population who
have made the choice of an alternative Life Style.

Comes now Appelent(s) and all others similarly situated with notice of a class claim, and of the unnecessary risk of future risk of future harm, by Offens's continuous ongoing deprivation of prisoners' constitutional rights.

The Juridiction of the proper hearing authority is herein invoked pursuant to Administrative Bulletins C 5-0-3, and 97/10 and also Penal Codes §§ PC 837.7, PC 832.8, CCR § 3391 and California Code of Regulations, Title Fifteen; with the Constitution of The United States of America the UC, 4 §§ 54100.2 and 54100.17.

All of the herein citations are incorporated by reference.

This evidence if believen, would a last finder to conclude the alleged retaltory misconduct, herein mentioned, is sufficient enough to deter a person of ordinary firmness from exercising their constitutional rights of freespeech and of meaningfull access to the courts.

Furthermore, this is a segregated group of prisoners at Avenal State Prison, known as Sensitive Needs Yard (SNY) we believe these injustices are soley based on this state classification and penological designation.

League v. Board of Trustees, 502 F. Supp. 789, 804 (N.D. Ill 1980)(finding that "the ultimate public interest lies in the protection of the Constitutional rights which plaintiffs assert").

The Public interest is not served by the ongoing violations of prisoners' constitutional rights.

We are asking for your help please.

THANK YOU

Very Truly Yours,

_Charles Walton  F48585_

Appellant(es)

Avenal State Prison
PO Box 8
Avenal, California 93204

summum bonum

Please be advised and duly informed, I am a California State Prisoner incarcerated at Avenal State Prison at Kings County.

With a notice of an ongoing violation deprivation of Inmates conduct and right of free speech and CDCR becomes ware of retaliation, on or the filing of a Civil Rights lawsuit against prison officials, for the deprivation of prisoners Basic Human Needs.

This evidence is believed, would allow a fact finder to conclude the alleged retaliatory conduct is sufficiently enough to deter a person of ordinary firmness from exercising constitutional rights of free speech and meaningful access to the courts.

(appellant(s), and all others similarly situated at all times mentioned herein are were inmates in the custody, care and safe keeping of CDCR employees at Avenal State Prison(ASP) at all times during incarceration appellant(s) has relied on the Warden at ASP to provide him, them with the tools, materials and the resources needed to attack sentence, directly or collaterally, and moreso to challenge their conditions of confinement.

The right of access to the courts must be freely exercisable by a prisoner without hinderance or fear of retaliation.

State Prison regulations that restrict or effectively prohibit inmates from filing habeas corpus petitions or civil rights lawsuits in federal court to vindicate federally protected, are invalid

States may not "abridge or impair" prisoners efforts [rights] to petition a federal court for the vindication of federal rights.

access to the courts, means the oportunity to prepare, serve and file whatever pleadings or other documents are necessary or appropriate in order to commence or prosecute court proceedings affecting one's personal liberty or to assert and sustain a defense therein, and to send and recieve communication to and from judges, lawyers, and State/federal agencies (/claims concerning such matters."

Access to the Courts, "to petition the government," and "its agencies "for the redress of grievances. This is garenteed under the First Amendment of the United States Constitution.

Under the Ninth Amendment states, "The enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the People."

The Fourteenth Amendment reads; "... nor shall any state; deprive any person of; liberty, or property without the process; of law; nor deny to any person with in its jurisdiction the Equal Protection; of the Laws."

Futher, there is a "Fundamental Constitutional Right" of all inmates to have the State assist them in the preparation and filing of meaningfull legal papers."

States must furnish prisoners "with adequate law library or adequate assistance from persons trained in Law, "in order to "insure that inmates access to the courts is adequate, effective and meaningfull."

The majority of RJD Special Needs Yards (SNY) inmates ap layman, in special deprots, illiterates, those with mental disorders and other; handicap's.

Mental Health Conditions can be very complex. They require treatment by a physician, psychologist or psychiatrist, doctors who specialize in treating the mentally ill. A number of issues frequently arise in treating mental health issues.

Furthermore, the Supreme Court has held that an illiterate inmate is entitled to assistance.

You can argue by analogy that a majority of PBSP SHU inmates either mental disorders, impaired mental agency, vision or hearing and are entitled to assistance because they are likely to have problems similar to an illiterate person in understanding the complexities of the law or whatever else is going on.

Prison inmate population is now, at least 217% beyond it's design capacity.

In the interest of fairness and equality, PBSP inmates are restricted to two visits a month, for possibly three two hour sessions at the law library on thursdays and other days of the week, pending the zone the inmate is housed on.

Averaging, approximately any where from four, and at least twelve hours a month at the law library to become familiar with the shelves, to learn and study law books of topics researched and to analyze the data, apply that knowledge constructively to their case, and to prepare documents to meet filing deadlines.

These restrictions are sure to inhibit the performance of even professional's under favorable conditions and better environments.

Over populated prisons are contrary to any form of better living and health and are discouraging to rehabilitation, education and presents many obstacles that deprive prisoners of meaningful study and access to the courts by hindering

their ability to assimilate information and to litigate effectively.

Under these circumstances and conditions any reasonable person could infer that the denial of needed tools/resources has/would sufficiently impede an inmates ability to successfully initiate/pursue claims and civil suits in court.

Inmates suffer injury in fact caused by acts of (A) (P) R employees and prison policies that hinder the view pertinent information necessary for understanding the rules of court and procedure or blatantly disregard of prisoners constitutional rights.

Thereby increasing/lessening the probability of suffering tangible harm unless they are allowed to obtain the relief being sought in court.

(B) inmates are being denied access to the law library, legal services and materials. Why? Inmates are told policy, and are given no room for debate or discussion.

Granting inmates, the service of the duplication (photo copies) of legal publications (law books/treaties), or to allow inmates to check books out. for the purpose of mere indepth review/study of complex concepts, legal strategies and of court procedures – would not impair effective prison administration.

The Warden and Senior Prison Officers know that appelent(s) and all other prisoners similarly situated of [...] are currently pursuing vindication for injuries suffered at the hands of deliberately indifferent prison officials mindsets and underground policies.

Appelent(s) has made repeated demands for Prison Officials to comply with the law. Despite this demand, respondent has failed and

continues to fail to comply with their Duty under the herein mentioned regulations and Penal Codes § 5058.

Respondent has a clear, present and ministerial Duty to comply with requirements of the Administrative Procedures Act (APA) California Codes of Regulations (CCR's), Penal Codes §§ 5058, The American Correctional Association Standards for incarcerated inmates, State Laws and The United States Constitution, and at all times relevant herein respondent has had and continues to have the Duty and ability to do so.

Toussaint v. McCarthy, 726 F. 2d 800, 801 (9th Cir. 1982) cert. denied 502 U.S. 874 (1991) (even those prisoners at "the bottom of the social heap... have, nevertheless, a human dignity and certain rights secured by the Constitution of the United States"). Tidmel v. Gomes, 889 F. Supp. 1146, 1244-45 (N.D. Cal. 1995).

Unfortunately Senior Prison Officials while recognizing the depth of the problem and documentation, fails to exhibit the force of will to tackle the problem in any systemic manner in what is likely years to come.

The appellant(s) has encouraged Prison Officials to treat this as an emergency, to break out of the "businessness as usual" mindset, and to take extreme measures to break through any bureaucratic or other barriers that are preventing them from finishing the appellants(s) with the resources necessary to file and maintain claims before the courts.

Notwithstanding these Duties and abilities respondant has failed and refused and continues to fail to perform their Duty as required by law. By all accounts the Kevani Prison Senior Administrative Officials management system is broken beyond repair. The harm already occur in this case (Class Numbers of C CV-07-03246-SBA) to Kevani Prison inmate population could not be

more grave and the threat of future injury, and the continued ongoing conscious deprivation of inmates constitutional rights is guaranteed in the absence thereof measures.

"Likewise, increased availability of legal resources, couldn't possibly interfere with nor inhibit the implementation of any legitimate penological interest.

"Maintaining institutional security and preserving internal order and discipline" are the central goals of prison administration.

A prison regulation infringing on an inmates constitutional rights is valid if it is reasonably related to legitimate penological interest. An interest that CDCR Officials continue total to explain, illustrate nor can they justify, their restrictions.

The opened book(s), and the knowledge therein sought, cures the ignorance adversely effecting the ignorant; whether or not the individual is aware of the effects of ignorance caused by the denial of legal reference books, tools and other resources necessary for the seeking of vindication in the courts.

To deny an inmate of this pertinate information causes them to suffer from the deprivation of their federally protected rights and other civil liberties.

Therefore, inmates have and continue to suffer injury-in-fact caused by the prison's policies and by the actions of subordinate CDCR employees.

A litigant must generally assert his or her own legal rights and interest, Warth v. Seldin, 422 U.S. 490, 499, 45 L. Ed. 243, 95 S. Ct. 2197 (1975). Powers v. Ohio, 499 U.S. 400, 411, 113 L. Ed. 2d 411, 111 S. Ct. 1364 (1991), " ... and we consider whether there is some hinderance to the 'plaintiff(s)' ability to protect his own interest." Id.

*Secretary of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 956, 81 L.Ed. 2d 786, 104 S.Ct. 2839 (1984) (fund-raising organization allowed to assert First Amendment rights...). In *Munson*, the Supreme Court wrote, "litigants... permitted to challenge a statute not because their own rights of free expression are violated but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected...." *Id.* at 956-57 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 37 L.Ed. 2d 830, 93 S.Ct. 2908 (1973).

[I]t is impossible for a written description to convey the pain and degradation which ordinary inmates at Avenal State Prison [imbibing] the physical suffering and wretched psychological stress which must be endured by those sick, injured and mentally disable who are denied their right of access to the courts, freedom of speech, due process and other rights secured under both the U.S. and State Constitutions.

The Second Circuit has recognized that "systematic deficiencies in staffing, facilities, or procedures [which] make unnecessary suffering inevitable" constitutes a violation of prisoners protected Constitutional Rights. *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977).

Effective access to the courts not only encompasses the right to look at law books, but the right to materials necessary to use them to communicate with the Courts, and other Government agencies.

Thus, the Supreme Court stated that indigent prisoners must be provided with paper and something to write with, and stamps to mail documents to courts or the parties of a suit.

CDCR rules further provide for photocopying services for prisoners legal

documents, and for free copying of indigent prisoners documents.

Currently ASP Officials have practiced, and policies permit CDCR employees to remove claims forms from inmates mail, opening mail from the courts / other Government Agencies, with-holding legal documents, prohibiting the timely return of legal papers / documents / work, and the deliberate distribution of incomplete / claims forms, refusing inmates Certified Trust Account Statements and refusing the necessary copies required by / for the Courts to, properly serve notice of complaint on the named, persons / organizations or the opposing party in a case.

These are just a few injustices and hindrances of their pursuit to redress and blatant deprivations of inmates rights and liberties that would be endured daily for exercising those rights guaranteed under the U.S. Constitution.

Practices, Procedures and Policies that fail to further any legitimate penological goal (not to be confused with an Officials desire to further their careers and the development of their personal ambitions for monetary gain at the [taxpayers] expense and needless suffering of prisoners) are retaliatory, when they interfere / hinder an individuals exercise of Civil Liberties and deny them of the right of access to the courts to challenge the conditions of their confinement and of their rights to seek compensation for injuries and harm and psychological distress and suffering caused by deliberately indifferent CDCR employees.

ASP Mail Room / Trust Office / Library / Custody Staff / Other CDCR employees and inmate "Library Clerks" deliberately hindering an inmates pursuit of and ability to initiate or maintain legal claims by reading, interfering with an inmates legal papers, is a gross obstruction of Justice and denial of the right of access to the courts and indicates a subornate institutional mindset, endangers and policies and a propensity for retaliatory acts against seeking vindication in the courts, or conditions they are subjected to.

    inmates

There is a grave and immediate threat and activity of harm to the appelent(s), the use of all less extreme measures of redemnification have been exhausted or prove futile. Continued insistance that compliance with normal administrative appeals time lines would lead only to confrontation and delay.

There is a lack of leadership within Avenal State Prison Administration to turn the tide within a reasonable amount of time. There has been bad faith on the part of Prison Officials and resources are being wasted.

Considering Avenal State Prison Officials Historical failure to comply with State/Federal Law and its Own CCRs, appelant(s) believes that the proper measure of futility is not one that can be calculated simply by chronological terms, but rather is one that should be measured in the present moment.

By that measure, we are at the point maximum futility in this complaint, where the State and Avenal Prison Officials has practically confessed their inability to grapple with the problem in any appreciable systematic manner for what is likely to be years to come.

In that, instances of justifying receivership, courts have typically found a lack of leadership that could be expected to improve conditions, systematic deficiencies in administrative organizational, and fiscal structure, institutional inertia, and similar indicia of bureaucratic inertia.

Convert part of existing SNY Libraries to Law Libraries or build several Law Library for SNY population.

Or the implementation of a paging system to increase an inmates access to legal reference materials/books, for more indepth studies of

legal matters/procedures required to effectively litigate in court, would be a simple and likely to provide a relatively quick and effective remedy.

In conclusion given the deplorable state of affairs at Atwood State Prison, Federal, State and Governmental powers-indeed obligation to remedy the situation, as discussed above the appellant(s) and all others similarly situated ask that you be compelled to move forward as expeditiously as possible in the case, within the constraints of "Due Process" and Fundamental Fairness, and set forth the requested relief.

Finally, consider this, as a general matter, the "public interest... is always well served by protecting the constitutional rights of all its members." <u>Reinert v. Haas</u>, 585 F. Supp. 477, 481 (S.D. Iowa 1984).

Regulations:

- The Rules Governing This Issue Is -
California Codes of Regulations
Title Fifteen and Title Twenty-Eight
Sections - 3271, 3270, 3130, 3132., 3133., 3134.,
3000.5, 3135.(b), 3136.(b), 3147.(a)(6), 3137.(b),
3141, 3142., 3144, 3021., 3160., 3162., 3380.(a),
3413, 3004, 3084.2, 327.(b).

- Penal Codes -

Sections - 5058, 2600, 2601 (d), 5054, 2601, 2930,
4570, 837.7, 832.8, 6125-6129, 832.5

- Government Codes -

Sections - 954.9 and 950.2, 19906, 19583.5, 11349.1, 11340.5,
11340.6, 11340.7.

- United States Codes -

Sections - 2072 Rules of Procedure and Evidence; power to prescribe
2073 Rules of Procedure and Evidence; method of prescribing

- Administrative  Bulletins -
Sections - 05-03, 98/10, 97/10
D.O.M §§ 54100.2, 54100.17, 54100.25.1.

## Memorandum of Points of Authority

Appellant(s), and all others similarly situated at PBSP have been subjected to retaliation from CDC employees for the assert of a remedy sought in a civil rights lawsuit challenging the conditions of their confinement and appellant(s) must seek other damages through the California Claims Board and are deprived of the right of access to the courts, freedom of speech and other civil liberties of the U.S. Constitution.

It is well settled that prisoners have a constitutional right of access to the courts, which requires access to "adequate law libraries or adequate assistance from persons trained in the law" for filing challenges to criminal sentences, both direct and collateral, and civil rights actions. Bounds v. Smith, 430 U.S. 817, 828, 52 L. Ed. 2d 72, 97 S. Ct. 1491 (1977); see also Lewis v. Casey, 518 U.S. 343, 355, 135 L. Ed. 2d 606, 116 S. Ct. 2174 (1996)(recognizing that prisoners be provided the tools "that inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement"); Wolff v. McDonnell, 418 U.S. 539, 577, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974) (extending right of access to the courts, founded on the Due Process Clause, to prisoners filing actions under 42 U.S.C. § 1983 to vindicate "basic constitutional rights").

This right of access to the courts is distinct from any liberty interest in remaining free from administrative or disciplinary segregation. Also a claim founded on the right of access remains viable after 9 action.

It is well established the prison administration policies must be reasonably related to a legitimate penological interest. To satisfy this inquiry courts will consider the following:

District courts adhere to The Turner Test (a Four Factor test):

1. whether a valid, rational connection exist between the regulation and a legitimate government interest behind the rule;
   (there is no rational justification for denying an indigent inmate the required postage for mailing his Forma Pauperis application to the Courts and then holding on to/refusing to return the mail, that was returned due to insufficient postage, to the appellant.)

2. whether there are alternative means of exercising the right in question;
   (there are no other alternative means by which inmates may be heard before the courts.)

3. what impact accommodation of the asserted Constitutional Right will have on guards, other inmates, and on the allocation of prison resources; and
   (any reasonable person would conclude the remedy being sought benifits all concerned parties.)

4. what easy alternatives exist to the regulation (provide inmates with constitutionally adequate housing/libraries and services before it becomes an issue.) because;
   although the regulation need not satisfy a least restrictive alternatives test, the existence of obvious alternatives may be evidence that the regulation is not reasonable

To achieve standing, inmates must show that they have suffered an actual (being forced to file important documents late) or threatened injury (often complaints on arguably actionable harms are dismissed due to failure to satisfy some technical requirement, see Lewis v. Casey (1996) 518 US. 343, 351 [116 S.Ct. 2174, 135 L.Ed. 2d 606.]

(also appellant is denied adequate time required to fully understand civil procedure in the absence of adequate assistance/counsel and he is forced to pursue a remedy before the courts or continue to needlessly suffer from living in unconstitutionally adequate housing that CDCR officials knowingly place prisoners in, and due to lack of education and a mental disorder, that requires greater access to law materials to effectively pursue relief.)

However, a claim based on the total lack of, or an inadequate law library, does not need to demonstrate such specific injury; see <u>Lewis v. Casey</u> (1996) 518 U.S. 343; 116 S.Ct. 2174; 135 L. Ed. 2d 606.); <u>Smith v. Lewis</u> (9th Cir. 1924) 886 F. 2d 1166.)

which may be traced to the challenged action, and which is likely to be redressed by a favorable decision. <u>Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.</u>, 454 U.S. 464, 472, 70 L.Ed. 2d 700, 102 S.Ct. 752 (1982).

Another defense sometimes raised by prison officials is one of financial constraints. This defense has been decisively repudiated, with some courts threatening to close down a jail or prison if it cannot be run in a constitutional manner. However, although fiscal constraints/considerations are no basis for the complete denial of constitutional rights, they can be taken into consideration in fashioning the appropriate relief. See <u>Jackson v. Bishop</u> (9th Cir. 1968) 404 F. 2d 571, 580; <u>Gates v. Collier</u> (5th Cir. 1974) 17 Cal. 3d 908, 920-921 [132 Cal. Rptr. 425]. See also <u>Bounds v. Smith</u> (1977) 430 U.S. 817, 825 [97 S.Ct. 1491, 52 L. Ed. 72]; <u>Wright v. Rushen</u> (9th Cir. 1981) 642 d 1129, 1134.

Prisoners challenging the constitutionality of officials actions retain other protection from arbitrary state action even within the expected conditions of confinement. They may invoke U.S. Con. amend. I, VIII, and the

equal protection clause of the U.S. Con- amends XIV where appropriate, and may draw upon internal and have drawn upon grievance procedures, and State Judicial review where available, are herein invoked.

"The right of access to the courts must be freely exercisable by a prisoner without hindrance or fear of retaliation." Milhouse v. Carlson, 652 F.2d 371, 374 (3d Cir. 1981)(locating right to access the courts in a retaliation case in the First Amendment right to petition for redress of grievances). However sending inmates legal mail, paperwork, denial of needed services and calling inmates out of their name (calling appellant "Asshole" and "Smartass") are just a few examples of the SP employees subordinate practices and policies.

Custody Officers and Staffs interference with, and discouraging inmates from preparing legal documents and implementing subordinate policies, just as to what inmates allowed to mail to the courts. The use of foul language being hostile and calling inmates out of their name. [IS Retalitory].

Opening and withholding legal mail trying to convince prisoners they have no right to file Civil Suits or to challenge the conditions of their confinement; and the purposeful provision of incomplete Claims Forms (documents at the library; [IS Hinderance and Retaliation].

Retaliation may be actionable even when the retalitory action does not violate a liberty interest See, e.g., Stanley v. Litscher, 213 F.3d 340, 343 (7th Cir. 2000)(holding that plaintiff stated claim for retaliatory transfer even though no liberty interest involved in transfer); Hause v. Benson, 173 F.3d 936, 939 (8th Cir. 1999)(same)."

Government actions, which standing-alone do not violate the Constitution, may none the less be constitutional torts if motivated in substantial part by a desire to punish Tan individual for exercise of a constitutional right." Thaddeus-X v. Blatter, 175 F. 3d 378, 386 (6th Cir. 1999)(en banc). CDCR Officials and Employees motive for punishing the appellant is due to his ten exercising his First Amendment Rights to redress the government and to freely speak of the injurys sustained while in the custody of CDCR Officials. see Walton v. California Department of Corrections and Rehabilitation et al In which CDC is facing a $130,000,000.00 exposure for the harms they have caused.

And while prison officials actions may not violate the constitution independently still remain actionable at the suit.- Prison officials harrasment during mail call (calling plaint(f out of his name) censoring his outgoing/incoming legal mail the denial of pertinate legal tools, materials, services, and other resources necessary to court proceedings are still actionable even when they don't violate the constitution independently; see Pratt v. Rowland, 65 F. 3d 802, 806-07 (9th Cir. 1995), the Court of Appeals for the Ninth Circuit held that Sadin did not bar a claim alleging that a prisoner-plaintiff had been transferred and placed in a double cell in retaliation for a television interview that he had given. The court stated:

To succeed on his retaliation claim, [the plaintiff] need establish an independent constitutional interest in either assignment to a given prison or placement in a single cell, because the crux of his claim is that state officials violated his First Amendment rights by retaliating against him for his protected speech

activities.

Id. at 806. In Babcock v. White, 102 F. 3d 267, 274-75 (7th Cir. 1996), the Court of Appeals for the Seventh Circuit agreed, holding that a prisoner-plaintiff's claim that a prison official had prevented an expeditious transfer in retaliation for his filing lawsuits against prison officials was actionable "even if [the prison officials'] actions did not independently violate the Constitution" and thus not barred by Sandin.

As the Supreme Court recognized in its footnote in Sandin, however, "prisoners... retain their protection from arbitrary state action even within the expected conditions of confinement." 515 U.S. at 487 n.11 (emphasis added).

Furthermore, there is an adverse action prong of a retaliation claim by standards established in Suppan v. Dadonna, 203 F. 3d 228 (3d Cir. 2000). "There, we consider whether the defendants' action of placing plaintiffs lower on promotion ranking lists in retaliation for the exercise of their First Amendment free speech rights was sufficiently adverse to state a claim for retaliation."

Likewise CDCR Prison Official's actions were/are directly related to appellant(es) exercise of his First Amendment Rights, and the appellant(es) believes they are trying to prevent him from seeking remedy, in case CV-07-03245-SBA in which failing to attain the relief sought could and more than likely will cause the appellant(es) to suffer irreparable injury and harm. Appellant also suffers nightmares of Custody Officers and Inmates attacking him, and the appellant has lost Ten pounds since this started from loss of appetite caused by the fear of Officers overstepping

their authority (as it has been publically confessed that
Custody are known to do).

There by, adversely affecting the appellent(s). "We held that it was,
stating that a fact finder could conclude that the alleged
retaliatory conduct was/is sufficient to deter a person of ordinary
firmness from exercising his First Amendment rights." Id. at 235
(quoting Bart v. Telford, 677 F. 2d 622, 625 (7th Cir.
1982)). This same test has been applied in the prison context.
See Thaddeus-X, 175 F. 3d at 396-97; Crawford-El v.
Britten, 320 U.S. App. D.C. 150, 93 F. 3d 813, 826
(D.C. Cir 1996)(en banc) (approving the Bart standard in
the prison context), reversed on other grounds, 523 U.S.
574, 140 L. Ed. 2d 759, 118 S. Ct. 1584 (1998).

Although it is possible that in some cases refusal of resources, documents
(forms) and services would not deter a prisoner of ordinary firmness from
exercising his or her First Amendment rights, we cannot say that such
action can never amount to adverse action. On the contrary, whether
a prisoner-plaintiff has met that prong of his or her retaliation claim
will depend on the facts of the particular case.

The appellent is a layman, highschool dropout who suffers from mild mental
disorder, whose only emotional support is his 63 Mother, in northern Cal.,
living with alzheimers who is unable to supply the appellent with needed materials
books required for the knowledge to effectivly navigate the judicial system,
though she has sent some info off the internet, it's not enough.

The appellent alleges that institutional policies and staffs actions have
resulted, inter alia, inadequate access to legal research materials and assistance.
A fact finder could conclude from those facts that retaliatory staff misconduct

harrassment and denial of access to legal tools would "deter a person of ordinary firmness from exercising his First Amendment rights." *Zimmer*, 203 F.3d at 235 (internal quotations omitted); see *Thaddeus-X*, 175 F.3d at 396 ("An action comparable to transfer to administrative segregation would certainly be adverse.")

However, "All that a plaintiff need show to establish standing to sue is a reasonable probability -- not a certainty -- of suffering tangible harm unless he obtains the relief that he is seeking in the suit," *Hoover v. Wagner*, 47 F.3d 845, 847 (7th Cir. 1995).

CVCR Officials and employees have conspired and retaliated against the appelent(s) for exercising their First Amendment Rights. Prison Officials and Staff have hindered appelent(s) pursuit for relief and deprive prisoners of their Federal Rights by doing affirmative acts), participating in anothers act(s), or by failing to do an act(s) which he/she is required to do.

Appelent informed and believes, and thereon alleges, that CVCR employees act(ed) intentionally in the matters and manners described above and, with knowledge of appelent(s) legal matters.

CVCR employees conduct violates 42 U.S.C. §1983, because that conduct deprives inmates of their First Amendment free Speech Rights and of the right to access the Courts to petition for the redress of grievances, Due Process and other Constitutionally secured Rights.

As a proximate result of defendants)/CVCR employees conduct, the appelent has suffered and continues to suffer general damages in the form of lost weight, stomach problems, psychological

emotional distress and least of all court-filing deadlines. The
appelent is informed and believes, and thereon alleges, that he
will continue to suffer such damages in the future.

As a futher proximate result of CDCR employees actis/conduct,
the appelent is informed and believes, and thereon alleges, that he
will suffer special damages in the future in the form of medical/
psychiatric bills/expenses other ill effects, and the expense of
court cost and other expenses due to this.

In acting as described hereinabove, CDCR employees acted
despicably, knowingly, willfully, and with reckless or callous disregard
for appelents federally protected rights. The appelent is entitled to
an award of compensatory and punitive damages for injuries suffered.

Appelent is entitled to declatory and injunctive relief, including, but
not limited to, an order requiring his transfer away from Pelical State
Prison (possibly CDCR), were he will not be subjected to retaliation
intended to instigate and/or ratified by defendants. There is no
adequate remedy at law to protect appelent from said retaliation, and
without the equitable relief sought he is susceptible to great and
irreparable injury and harm. The balance of hardships tips
markedly toward appelent in that there would be little or no
prejudice or harm to CDCR personnel should the appelent
be transfered away from PSP but great harm to the appelent
should he be required to stay at PSP.

Finally, the prison administration must proffer some evidence to support its restrictions. See Wikimiya v. Jones, 28 F.3d 592, 598-99 (7th Cir. 1994); Alston v. De Brown, 13 F.3d 1036, 1040 (7th Cir. 1994); De Mallory v. Cullen, 855 F.2d 442, 448 (7th Cir. 1988) The prison administration "cannot avoid court scrutiny by reflexive, rote assertions." Williams, 851 F.2d at 886 (Flaum, J., concurring).

Officials must provide the court with something -- an affidavit from a prison official setting out the policy and reasons for it; president policies; regulatory history; academic literature -- on which to hang policies.

It is not currently obvious that an additional instance where CDCR Personnel are able to tangentially help an inmate is likely to lead to an increase of corruption, coercion nor threaten security.

Evidence to suggest this connection should be at the heart of the Turner analysis.

CDCR Officials, Administrators and personnel posses immense control over the lives of inmates.

On the heels of this observation, we hasten to add that such policy making, consistent with the law, is, of course, wholly in the hands of the prison administration.

While, it's not necessary that we agree with prison administration's chosen course, but only that we be able to point to some rational basis for it.

The conditions, practices and omissions that form the basis of this complaint are common to all members of the class and the relief sought will apply to all of them. The claims of the named appelentes) are typical of the claims of the class.

The prosecution of seperate actions by individual members of the class would create a risk of inconsistant varying adjudications which would establish incompatible standards of conduct for the defendents. The prosecution of seperate actions by individual members of the class would create a risk of adjudications with respect to individual members which would, as a practical matter, substantially impair the ability of other members to protect their interest.

California State and Federal Prison Officials have acted or refused to act on grounds generally applicable to the class, making appropriate injunctive, declatory and monetary relief with respect to the class and subclass as a whole.

There are questions of Law and fact common to members of the class, including officials violation of inmate US Constitional rights.

The named appelant(s) are not capable without counsel of fairly and adequately representing their/the Class and protecting its interest.

Therefore appelant(s) moves this court, pursuant to 42 USC § 1988, 29 U.S.C. § 794 a(b), and 42 USC § 12.205, to a point Michael W. Bien, Attorney at Law of Rosen, Bien and Galvan, L-L P of San Francisco, California counsel of record to protect their interest.

Rights are meaningless unless we know how to apply them.

Respectfully Submitted

Charles Watton  F48589

&pellent(s)

Avenal State Prison
PO Box 8
Avenal, Ca  93204

# PRAYER FOR RELIEF

WHEREFOR, plaintiff(s) Charles Walton, et al., pray for:

1.    Injunctive and Declatory relief;

2.    Compensatory damage according to proof;

3.    Punitive damages according to proof;

4.    Reasonable Attorneys fees pursuant 12 U.S.C. §1988;

5.    Cost of suit; and

6.    Such further as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff(s) Charles Walton, et al., hereby demands a trial by jury.

Dated: __October 24__, 2007

By: _____

Charles Walton    F48589

CC:

- Arnold Schwarzenner, Governor
- State of California

Judge Thelton E. Henderson
Northern District of California
San Francisco, Ca

U.S Department of Justice, Civil Rights Division
Jenine Worden, Deputy Chief
Washington, D.C.

Mr. James E. Tilton, Secretary
Cal. Youth and Adult Correctional Agency

- Mr. William Gausewitz, Director
- Cal. Department of Corrections and Rehabilitation

Donald Spector, Attorney at Law
Prison Law Office

Rosen, Bien and Galvan, LLP

- Office of Internal Affairs

- Hartley, Warden (A)

California State Legislature Assembly and State Senate
State Capitol

McCutchen, Doyle, Brown and Emersen

Mr. Andy Furillo
Sacramento Bee

San Francisco Chronicle

Los Angeles Times

The Fresno Bee

M. L. Sungo, Mother
Gibson City, Ca

C. E. Walton Sr., Father
Fresno, Ca

Pursuant to 28 USC. §1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on October 24, 2007.


Respectfully Submitted

by

Charles Walton F-48584

